IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>$20,000.00 in U.S. Currency,<br><br>                Defendant in Rem. | No. 3:23-CV- |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $20,000.00 in U.S. currency ("Defendant Property"):

### NATURE OF THE ACTION

**1.** This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property, because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $20,000.00 in U.S. currency. The Defendant Property was seized from Aaron Lee Johnson at DFW Airport, Texas, on February 15, 2023. On February 17, 2023, it was deposited into a Loomis bank account in Dallas, Texas.

6. Aaron Johnson, a resident of Balch Springs, Texas claimed the Defendant Property on March 17, 2023 and sought judicial referral.

## FACTS

7. The factual basis for the forfeiture in this case involves an investigation by the DEA Dallas Airport Interdiction Group ("DEA Task Force") at DFW Airport ("DFW"). One of the DEA Task Force's responsibilities at DFW is to investigate the use of the airport and the airlines that service the airport to perpetrate or facilitate the illegal transportation of proceeds obtained from criminal conduct including drug trafficking.

8. Those trafficking in illegal narcotics must often find a way to transport the proceeds of their criminal conduct without drawing the attention of law enforcement. Air travel is one mode used by the traffickers or couriers working for or with them to transport such proceeds. The use of air travel allows drug traffickers to keep their ill-gotten gains "off the books" and outside the banking system, which they know is regularly monitored by banking and governmental authorities.

9. Investigators with the DEA Task Force are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

10. On February 15, 2023, DEA Task Force members including Special Aents Andrew Woeppel, Sean Kassouf, Cheryl Davis, Task Force Officers ("TFOs") Daniel Sandate, Eric LaCross, and Canine Corporal Shawn Witt, were conducting interdiction operations on American Airlines flight 2801 flying from DFW to Sacramento, California.

11. On the luggage ramp for this flight, SA Woeppel, SA Davis, and SA Kassouf identified four black, hard-sided suitcases that were unusually light weight for their size as if there was not much inside the luggage.

12. Two of the pieces of luggage had a name of Aaron Johnson on them. The other two pieces of luggage had a name of Gary Johnson on them.

13. Canine Corporal Witt is a certified handler of Sunka, a specially trained canine. Sunka is a certified narcotics odor detection canine. Both are certified by the

National Narcotic Detector Dog Association. Sunka can detect the odors of four controlled substances including marijuana, cocaine, heroin, and methamphetamine.

14. Canine Corporal Witt observed Sunka give a positive alert for the presence of an odor of narcotics during an open-air sniff on the luggage belonging to Aaron Johnson and Gary Johnson.

15. After the positive canine alert, SA Woeppel, SA Davis, SA Kassouf and TFO Sandate went up to the jet bridge to speak to Aaron Johnson and Gary Johnson.

16. The officers learned that Aaron Johnson and Gary Johnson had not yet boarded the plane, but were attempting to board the flight as one of the last passengers. In the experience of the undersigned officer, this is a technique used by narcotics traffickers to detect law enforcement or an airport security presence.

17. While standing at the jet bridge entrance, SA Woeppel identified himself as a law enforcement officers and asked Aaron Johnson to see his identification and boarding pass, which he provided. Aaron Johnson was identified by his Texas driver's license. SA Woeppel asked Aaron Johnson if he could speak to Aaron Johnson about his travels and Aaron Johnson agreed.

18. SA Woeppel asked Aaron Johnson if Sacramento was his final destination and Aaron Johnson answered in the affirmative. SA Woeppel asked Aaron Johnson where he was staying and Johnson showed SA Woeppel a Marriot hotel application which showed a reservation for two nights. SA Woeppel asked if Aaron Johnson was

only staying for two nights and Aaron Johnson said that he was not. When SA Woeppel asked where he was staying in Sacramento after he stayed at the Marriott, Aaron Johnson replied he did not know.

19. During his conversation with SA Woeppel, Aaron Johnson displayed signs of extreme nervousness, including fumbling with his phone, sweating profusely, and mumbling his answers.

20. Throughout their conversation, Aaron Johnson's path was not impeded and he remained free to walk away from the officers.

21. SA Woeppel asked Aaron Johnson if he was traveling with Gary Johnson and if they knew each other. Aaron Johnson said Gary Johnson was his "little cousin."

22. SA Woeppel told Aaron Johnson that his luggage was identified as being suspicious and that a trained narcotics detection canine had alerted on both of his suitcases. In response to questions from SA Woeppel, Aaron Johnson denied traveling with any narcotics including cocaine, methamphetamine, or any weapons.

23. SA Woeppel asked if his partners could look in Aaron Johnson's checked bags to make sure. Aaron Johnson mumbled something unintelligible. Throughout their conversation, SA Woeppel had to repeat his questions and clarify Aaron Johnson's answers several times.

24. SA Woeppel repeated the question about his partners looking in Aaron Johnson's checked bags. Aaron Johnson said "fine, let's go" and moved as though he was going to accompany the officers to the checked bags.

25. SA Woeppel explained that his partners were with the luggage below the aircraft and would search the bags below so as not to delay Aaron Johnson or the flight.

26. SA Woeppel asked Aaron Johnson if his partner could search Aaron Johnson's carry-on bag, a light blue backpack, and Aaron Johnson agreed. SA Davis unzipped the bag and asked Aaron Johnson if he was traveling with any large amounts of U.S. or foreign currency, which Aaron Johnson denied. SA Davis searched Aaron Johnson's backpack and did not locate currency or contraband items.

27. SA Woeppel thanked Aaron Johnson for his time, and Aaron Johnson walked down the jet bridge and boarded the flight.

28. While SA Woeppel and SA Davis were conversing with Aaron Johnson on the jet bridge, SA Kassouf spoke with Aaron Johnson's traveling companion, Gary Johnson.

29. SA Kassouf identified himself as a law enforcement officer and asked Gary Johnson to see his identification and boarding pass, which Gary Johnson provided. Gary Johnson was identified by his Texas identification card. SA Kassouf asked Gary Johnson if he could speak with him about his travel and Gary Johnson agreed.

30. SA Kassouf asked Gary Johnson if he was traveling with Aaron Johnson, and Gary Johnson replied that he was. TFO Sandate then joined the conversation with SA Kassouf and Gary Johnson.

31. SA Kassouf advised Gary Johnson that a trained narcotics detection canine alerted on Gary Johnson's two suitcases. SA Kassouf asked Gary Johnson if he was traveling with any illegal narcotics, large amounts of U.S. currency, weapons, or any thumb drives reflecting human trafficking activities. Gary Johnson replied that he was not and that officers could check his suitcases. SA Kassouf asked Gary Johnson if he would give consent for other officers to check his suitcases and his carry-on luggage and Gary Johnson gave consent.

32. SA Kassouf began to search Gary Johnson's carry-on luggage and immediately noticed a strong odor of marijuana emitting from the bags. SA Kassouf asked Gary Johnson if he smoked marijuana and Gary Johnson answered yes. In response to SA Kassouf's questions, Gary Johnson explained Sacramento was his final destination and he was going to see his baby and girlfriend and stay with them.

33. SA Kassouf located a bundle of U.S. currency inside a front pocket of a pair of blue jeans inside Gary Johnson's carry-on bag. Gary Johnson immediately advised SA Kassouf there was more money in his carry-on luggage. SA Kassouf then found another bundle of U.S. currency inside a blue jean pocket. SA Kassouf asked Gary

Johnson how much money was in his bag and Gary Johnson replied about $7,000. In response to a question about what he did for a living, Gary Johnson said he was a barber.

34. SA Kassouf thanked Gary Johnson for his cooperation and Gary Johnson boarded the plane.

35. After Gary Johnson gave consent to search his checked luggage, TFO LaCross searched both of Gary Johnson's checked bags. In one suitcase, TFO LaCross found only a pillow, bedsheets, and a bed comforter. In the other suitcase, TFO LaCross found a jacket, sweatpants, and some children's clothing.

36. After Aaron Johnson gave consent to search his checked luggage, TFO LaCross searched both of Aaron Johnson's checked bags. Aaron Johnson's bags contained pillows, bedsheets, and a bed comforter, as well as two vacuum sealed plastic bags, each containing unknown quantities of U.S. currency, wrapped inside the bed comforter.

37. TFO LaCross used a narcotics detection swab Mistral D4D on the interior of the luggage lining and the vacuum sealed plastic bags containing the money, which yielded a positive result for the presence of marijuana.

38. TFO LaCross seized the U.S. currency and put a copy of the DEA-12 receipt for the currency in Aaron Johnson's checked bag, which was returned to American Airlines personnel.

39. The money seized from Aaron Johnson totaled $20,000.00. In the officers' experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

40. After the seizure, officers ran system checks which revealed that Aaron Johnson has a criminal history including evading arrest and detention with a vehicle, fleeing a police officer, possession of marijuana.

[remainder of page intentionally left blank]

## FIRST CAUSE OF ACTION
### 21 U.S.C. § 881(a)(6)
**(forfeiture of property related to drug trafficking)**

1. The United States reasserts all allegations previously made.

2. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

3. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

4. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CAUSE OF ACTION**
**18 U.S.C. § 981(a)(1)(C)**
**(forfeiture related to violation of the Travel Act)**

5. The United States reasserts all allegations previously made.

6. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

7. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

8. 18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

9. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

10. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States receives its costs of court and all further relief to which it is entitled.

DATED this 20th day of June, 2023.

                                LEIGHA SIMONTON
                                UNITED STATES ATTORNEY

                                */s/ Elyse J. Lyons*
                                Elyse J. Lyons
                                Assistant United States Attorney
                                Texas Bar No. 24092735
                                1100 Commerce Street, Third Floor
                                Dallas, Texas 75242-1699
                                Telephone: 214-659-8774
                                Facsimile: 214-659-8805
                                Elyse.lyons@usdoj.gov

                                ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Special Agent (SA) with the Drug Enforcement Agency (DEA). As a SA with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this _____ day of June 2023.

                                             _____
                                             SA Cheryl Davis
                                              Drug Enforcement Agency